UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINA J.,

                      Plaintiff,                   **DECISION AND ORDER**

       v.

                                     1:21-CV-00317 EAW

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____


## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Christina J. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted, and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on June 8, 2018.  (Dkt. 6 at 26, 72-73).[1]  In her applications, Plaintiff alleged disability beginning March 20, 2018, due to generalized anxiety disorder, major depressive disorder, fibromyalgia, tarlov cyst, ganglion cyst, and diabetes.  (*Id.* at 26, 74-75, 86-87).  Plaintiff's applications were initially denied on October 17, 2018.  (*Id.* at 26, 98-105).  A telephone hearing was held before administrative law judge ("ALJ") Robert A. Kelly on July 20, 2020.  (*Id.* at 26, 49-71).  On August 3, 2020, the ALJ issued an unfavorable decision.  (*Id.* at 23-43).  Plaintiff requested Appeals Council review; her request was denied on January 5, 2021, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-11).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).   To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.      **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on March 31, 2023. (Dkt. 6 at 29). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 20, 2018, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "fibromyalgia, left rotator cuff tendinitis, obesity, depression, [and] anxiety." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of essential hypertension, mild degenerative joint disease of the bilateral hips, diabetes mellitus, gastroesophageal reflux disease (GERD), posttraumatic stress disorder, and borderline personality disorder were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02, 12.04, 12.06, 12.08, and 12.15 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 19-2p. (*Id.* at 29-31).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

> She can stand/walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can never climb ropes; can occasionally crawl or climb ladders or scaffolds; can frequently, but not constantly, perform overhead lifting with the left upper extremity; no use of power tools or concentrated

exposure to vibrating tools or machinery.  Mentally, the claimant can tolerate ordinary levels of supervision in the customary workplace, and can tolerate occasional interaction with co-workers; she cannot perform stressful first-responder type jobs such as police officer, fire fighter or ambulance driver; and due to limitations in maintaining focus, attention and concentration, she may be off-task for up to 5% of the workday.

(*Id.* at 31).  At step four, the ALJ found that Plaintiff could perform her past relevant work as a collection clerk, as that work did not require the performance of work-related activities precluded by the RFC, and therefore Plaintiff was not disabled.  (*Id.* at 41-42).

The ALJ further made alternative findings for step five of the sequential evaluation process, including that he relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were additional jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marking clerk, router, and photocopy machine operator.  (*Id.* at 42-43).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 43).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred in evaluating Plaintiff's subjective complaints, and (2) the ALJ erred in evaluating the mental RFC.  (Dkt. 8-1 at 2, 11-22).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.   Evaluation of Plaintiff's Credibility

Plaintiff's first argument is that the ALJ erred in assessing the credibility of her subjective complaints.  (*Id*. at 11-15).  Specifically, Plaintiff alleges that she reported

difficulty using her hands, sitting, or standing for a long time, and the ALJ improperly rejected this opinion by discussing her daily activities and minimal objective findings, including because she has fibromyalgia "which is 'elusive' and not objectively measurable." (*Id.* at 11). In response, the Commissioner argues that it was proper for the ALJ to consider Plaintiff's activities of daily living, and that the ALJ appropriately considered the longitudinal medical and non-medical evidence in assessing Plaintiff's fibromyalgia. (Dkt. 9-1 at 11-16).

The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" her symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage

in a credibility inquiry." *Id*.; *see also Mary C. o/b/o Kimberly C. v. Comm'r of Soc. Sec.*, No. 6:21-cv-06358-TPK, 2023 WL 4699921, at *4 (W.D.N.Y. July 24, 2023) (describing two-step inquiry for evaluating a claimant's credibility).

In this case, the ALJ applied the two-step inquiry. At the first step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but further that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," for the reasons further explained by the ALJ in the decision. (Dkt. 6 at 33).

First, the ALJ cited to extensive medical evidence in the record, which does not support Plaintiff's reports of debilitating symptoms caused by her impairments. (*See id*. at 33-38). For example, the ALJ discussed normal x-ray findings, concluding that "[t]he normal imaging findings do not support the level of limitation the claimant alleges." (*See id*. at 33 (discussing April 2017 x-rays, including x-ray of lumbar spine which showed "maintained vertebral body heights and no fracture or subluxation," and x-ray of bilateral knees, which showed "no acute fracture or dislocation in either knee, well-maintained joint spaces, a small right effusion, and normal overlying soft tissues")). The ALJ also discussed the lack of objective examination findings supporting Plaintiff's complaints of back pain, citing to records from 2018 visits with both her primary care provider and Dent Neurology, which showed that Plaintiff had normal gait and station, as well as full range of motion in the upper extremities, no swelling or edema, and intact sensation. (*Id*. at 34; *see also id*. at 34-35 (discussing October and November 2018 evaluations by rheumatology, revealing

normal gait and no restricted range of motion, but positive tender points, and concluding that "[t]he mostly normal objective exam findings and the conservative treatment recommendations do not support the level of limitation the claimant alleges")).  Given this evidence, the ALJ found that "[d]espite the claimant's subjective complaints, physical exams [were] generally within normal limits," and therefore Plaintiff retained the ability to perform the activities outlined in the RFC.  (*Id*. at 35; *see also id*. at 35-37 (discussing medical records and examinations from December 2018, February 2019, April 2019, September 2019, December 2019, and January 2020, showing normal gait and station, and mostly normal physical examinations)).

In addition to relying on the objective examination findings in assessing her subjective complaints, the ALJ discussed Plaintiff's reported activities of daily living, which he concluded were not consistent with her claim that she was unable to work. Specifically, the ALJ explained that Plaintiff described daily activities that were "not limited to the extent one would expect given her complaints of disabling symptoms and limitations."  (*Id*. at 32; *see also id*. ("The undersigned finds claimant's testimony unpersuasive as inconsistent with her own reported level of daily activities and childcare.")).  For example, the ALJ noted that Plaintiff is a full-time single mother of two children with little to no support system, that she does "everything and anything" associated with their upbringing, including taking them to school, preparing their food, shopping for clothes and groceries, and attending their extracurricular activities.  (*Id*.).  In

addition, the ALJ discussed that Plaintiff prepares simple foods and cooks once per week, drives and can use public transportation, and does some cleaning.  (*Id*.).

Plaintiff argues that her engaging in minimal household chores, performing basic activities of self-care, and caring for her children do not by themselves contradict claims of disability, and that a claimant "need not be an invalid" to receive benefits.  (Dkt. 8-1 at 13-14).  Plaintiff's argument is misplaced.  While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination."  *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012).  Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.  20 C.F.R. § 416.929(c)(3)(i).  In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of h[er] symptoms are consistent with the objective medical and other evidence."  *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014).  This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record."  *Id*.

Here, the ALJ properly found that Plaintiff's claims regarding her symptoms were inconsistent with the other evidence of record, including her own reports of her activities

of daily living.  Despite Plaintiff's claim that her impairments were completely disabling, and as noted by the ALJ, Plaintiff also reported that she could cook, clean, shop, and provide care for her children.  These activities are inconsistent with the severity of symptoms Plaintiff claimed.  *See Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were inconsistent with the plaintiff's report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks").  Accordingly, the ALJ did not err in considering Plaintiff's activities of daily living in connection with assessing her subjective complaints of pain.

Plaintiff further contends that fibromyalgia, which does not produce objective medical findings, undermines the ALJ's credibility determination, and that a conservative treatment regimen does not support the ALJ's conclusion because "there is no radical treatment for fibromyalgia." (Dkt. 8-1 at 11, 14).  It is clear from the written determination that the ALJ considered Plaintiff's fibromyalgia diagnosis and the limitations caused by this diagnosis.  (*See, e.g.,* Dkt. 6 at 33 (noting that an April 2017 visit with rheumatology yielded a diagnosis of fibromyalgia, that "follow up was to be as needed," and "[t]he restriction to no use of power tools or concentrated exposure to vibrating tools or machinery adequately accommodates the fibromyalgia symptoms"); *see also id*. at 32 (discussing Plaintiff's testimony regarding her complaints of pain due to fibromyalgia, including that she alleged "pain in her 'entire' body usually at a mild level of pain," and that the "[t]he pain level goes up and down")).  In addition, it is apparent from the written determination that the ALJ considered the longitudinal treatment record in assessing limitations caused by Plaintiff's fibromyalgia.  (*See id.* ("One indication of the

persuasiveness of an individual's statements is their consistency, both internally and with other information in the case record.")).

Plaintiff argues that the ALJ cannot rely on the objective medical evidence in assessing her fibromyalgia. Here, the ALJ did not rely solely on a lack of objective medical evidence when assessing Plaintiff's credibility as it pertained to her impairments, including fibromyalgia. Rather, as discussed above, the ALJ relied on Plaintiff's activities of daily living as those pertained to limitations caused by fibromyalgia. (*See* Dkt. 6 at 31-33). In other words, this is not a case where the ALJ discounted Plaintiff's complaints of pain solely based on objective medical evidence.

In sum, the Court finds no error in the ALJ's credibility assessment. The ALJ applied the two-step inquiry and set forth well-supported reasons for finding Plaintiff's subjective allegations less than fully credible. Accordingly, remand is not required on this basis.

### B.   **Evaluation of the Mental RFC**

Plaintiff's second argument is that the ALJ incorrectly assessed the mental RFC. (Dkt. 8-1 at 15-22). Specifically, Plaintiff contends that the ALJ did not fully incorporate limitations assessed by consultative examiner Gregory Fabiano, Ph.D., despite finding his opinion to be "persuasive." (*Id*. at 15). Plaintiff further argues that the ALJ's assessment of a five percent off-task limitation is not supported by the record. (*Id*. at 19). In response, the Commissioner contends that the ALJ appropriately considered the evidence in the record, including the medical opinion evidence offered by Dr. Fabiano, in assessing the

mental RFC, and also that the off-task limitation is supported by substantial evidence. (Dkt. 9-1 at 16-23).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

The Court turns first to the ALJ's assessment of the opinion evidence offered by Dr. Fabiano. Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's]

medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at

§§ 404.1520c(b), 416.920c(b).  "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted).  Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may—but is not required to—explain how he considered the remaining factors.  *Id.*

Dr. Fabiano examined Plaintiff on August 10, 2018.  (Dkt. 6 at 433).  After reviewing Plaintiff's medical history (*id.* at 433-34), which included outpatient mental health treatment beginning in 2017, Dr. Fabiano performed a mental status examination, (*id.* at 434-35).  Dr. Fabiano found that Plaintiff was cooperative, as well as that she had an adequate manner of relating and social skills, fluent speech, coherent and goal-directed thought processes, full range of affect for speech and thought content, anxious mood, and intact attention and concentration.  (*Id.*).  Her recent and remote memory skills were "mildly impaired" due to distractibility.  (*Id.* at 435).  She had good insight and judgment, and her intellectual functioning was average.  (*Id.*).  Dr. Fabiano offered the following medical source statement:

> The claimant appears to have mild limitations in her ability to understand, remember, or apply simple directions and instructions.  The claimant appears to have moderate limitations in her ability to understand, remember, or apply complex directions and instructions; regulate emotions, control behavior, and maintain well being; and interact adequately with supervisors, co-workers, and the public.  The claimant does not appear to have evidence of limitation

in her ability to use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; or have an awareness of normal hazards and take appropriate precautions.

The results of the examination appear to be consistent with psychiatric problems, but in itself this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

(*Id*. at 436).

The ALJ discussed Dr. Fabiano's examination at length in the written determination. (*Id*. at 38-39). The ALJ explained that Dr. Fabiano found the opinion to be "persuasive," because "it is consistent with the evidence as a whole, and is supported by the very thorough CE examination itself, the mental status exams throughout the treatment record that show variable moods but otherwise mostly normal mental status exams, and supported by the claimant's full activities of daily living, including full childcare" (*id*. at 39).

Plaintiff argues that the RFC does not incorporate all of Dr. Fabiano's assessed limitations, including limitations for public contact or for regulating emotions. (Dkt. 8-1 at 16-19). Dr. Fabiano opined that Plaintiff had "moderate" limitations in those areas of mental functioning. In terms of interacting with others, the RFC limits Plaintiff to "occasional" interaction with co-workers. An opinion that a claimant has "moderate" limitations is consistent with "occasional" interaction with co-workers. *See, e.g., Alicia T. v. Comm'r of Soc. Sec.*, No. 6:21-cv-06529-RJA, 2023 WL 4999844, at *5 (W.D.N.Y. Aug. 4, 2023) ("A moderate limitation in social interaction or ability to interact appropriately with the public, coworkers, or supervisors can be accommodated by a restriction of no more than occasional interaction."). Dr. Fabiano otherwise found that

Plaintiff had only mild limitations in her ability to understand, remember, or apply simple directions and instructions, and no limitations in her ability to use reason and judgment to make decisions, to sustain concentration and perform a task at a consistent pace, to sustain an ordinary routine and regular attendance, or to take appropriate precautions, and therefore it is clear to the Court why the RFC does not include further accommodations, such as a restriction to only simple work.

While the RFC does not place limitations on Plaintiff's interaction with supervisors or the public, or on regulating emotions, this is supported by Dr. Fabiano's mental examination of Plaintiff which, as noted above, showed that Plaintiff was cooperative and that she had an adequate manner of relating and social skills.  Further, as the ALJ explained in the written determination, Plaintiff's "variable moods and mild to moderate mental symptoms but with cooperative manner, pleasant demeanor, alert mentation, and normal cognitive status and thought process support some limitations, accounted for in the residual functional capacity above, but do not support greater limitations."  (Dkt 6 at 37; *see also id*. at 38 (discussing Dr. Fabiano's examination findings, and noting that "[d]espite her subjective reports, the claimant was well-groomed, alert, motor behavior was restless but eye contact was appropriate; speech was fluent and clear, and thought processes were coherent.  Affect was of full range and she was fully oriented.  Attention and concentration were intact.")).  The ALJ also discussed in detail Plaintiff's mental health treatment records, which documented fair eye contact, normal speech, appropriate thought content, logical thought processes, full orientation, and fair insight and judgment.  (*Id*. at 37).  The ALJ observed that "[t]he record shows the claimant's symptoms wax and wane but are

generally controlled." (*Id.*). Contrary to Plaintiff's implication, the ALJ was not required to adopt the entirety of Dr. Fabiano's opinion, *see Matta*, 508 F. App'x at 56—indeed, Plaintiff has failed to identify evidence supporting that greater limitations are necessary—and it is clear to the Court from the written determination how the ALJ arrived at the assessed RFC.

Plaintiff also argues that the five percent off-task limitation included in the RFC is not supported by substantial evidence, arguing that "[i]f the ALJ believed that an off-task determination was necessary and no such opinion was provided in the record, he should have obtained a medical opinion supporting such a limitation." (Dkt. 8-1 at 19-21). As noted above, the ALJ's RFC determination need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta*, 508 F. App'x at 56. Here, the ALJ explained that he afforded Plaintiff a five percent off-task limitation "due to limitations in maintaining focus, attention and concentration." (Dkt. 6 at 40). The ALJ explained that a greater limitation for time off-task—specifically, the 25 percent off-task limitation opined by Emma Montague, LMHC—was "in sharp contrast to the multiple mental status notes in the mental health treatment record that show intact attention and the ability to pay attention during the therapy sessions," and also was "in sharp contrast to the claimant's ability to provide full-time childcare to her two children seven days a week." (*Id.*). The ALJ was not required to adopt LMHC Montague's opinion, and "[t]he fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [the claimant's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence." *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016); *see also Lesanti v.*

*Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").  Plaintiff has failed to demonstrate that a greater off-task limitation is appropriate under the circumstances.  Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 27, 2023
        Rochester, New York